# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KENNETH E. BROWN** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CAUSE NO. 1:08CV837 LG-RHW** |
| | § | |
| **UNITED PARCEL SERVICE, INC.** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion for Summary Judgment [23] filed by Defendant United Parcel Service, Inc. The Plaintiff has responded, and UPS has replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that UPS has shown that there is no question of material fact for the jury and that they are entitle to judgment as a matter of law. Accordingly, the Motion will be granted.

### FACTS AND PROCEDURAL HISTORY

Kenneth Brown, an African-American male, was terminated from his employment with United Parcel Service after UPS determined that he had been involved in an "avoidable runaway accident." Brown disagrees with the UPS's stated reason for his termination, contending that he was actually terminated because of his race and in retaliation for previous grievances he had filed against UPS. Further, he alleges that his supervisor, Michael Bates, displayed racial animus toward African-American employees and thereby created a hostile working environment.

Brown worked as a package car driver for UPS for seventeen years. As a UPS driver, he was also a member of the International Brotherhood of Teamsters, Local 891. The terms and conditions of his employment were governed by the National Master United Parcel Service Agreement and Southern Region Supplemental Agreement ("the National Master Agreement").

Bates became the business manager of the UPS Gulfport operations, and consequently Brown's supervisor, in early 2007.

Brown's accident occurred on October 19, 2007 in the parking lot of one the UPS customers. After Brown had parked the truck and gone into the back to sort packages, the truck rolled forward about 15 feet and struck another vehicle parked in the lot. Brown called the On Road Supervisor and told her that his parking brake had not worked properly - he had pulled it, but it did not hold. The Supervisor told Brown not to move the truck. She and Bates went to the scene. When they arrived, Brown had moved the truck about 20 yards away and disassembled the parking brake. Bates reassembled the brake and then tested it in the location of the accident. The parking brake operated properly during the testing.

After a UPS investigation into the accident, the company concluded that it was an avoidable runaway accident. This is one of the few articulated reasons for termination without notice in the National Master Agreement which states:

ARTICLE 52 - DISCHARGE OR SUSPENSION

(A) The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of a complaint against such employee to the employee, in writing, and a copy of the same to the Local Union, except that **no warning notice need be given an employee before discharge if the cause of such discharge is** dishonesty, drinking of or under the influence of alcoholic beverage or narcotics, including hallucinogens while on duty, carrying or permitting the carrying of drugs or narcotics on his/her person, or equipment, that is prohibited by State or Federal Law (including meal period), recklessness resulting in a serious accident while on duty, **an avoidable runaway accident**, failure to report an accident, carrying of unauthorized passengers while on the job or engaging in unprovoked physical violence on Company property or while on duty.

Ct. R. 23-5 p.7 (emphasis added). Bates determined that Brown should be terminated pursuant to

Article 52(a) of the National Master Agreement.  Brown was terminated on October 25, 2007.

Brown subsequently filed a grievance seeking reinstatement.  Ct. R. 23-5 p.10.  It was reviewed by the Southern Region Area Parcel Grievance Committee, consisting of a joint panel of UPS and union representatives.  The Committee denied Brown's claim.  *Id*. at 12.

Brown then filed a charge of discrimination with the EEOC.  He charged that Bates had threatened his job because he had been taking his lunch breaks at home.  As he and "several other drivers (White)" had done this before without complaints from management, Brown felt Bates was retaliating against him for filing various grievances.  Brown also charged that he was misrepresented by the Teamster Local Union 891 at the Committee meeting and wrongfully terminated because other, Caucasian, workers had not been terminated after runaway accidents.  The EEOC was unable to conclude that any violations had occurred and issued a Dismissal and Notice of Rights letter on August 12, 2009.  Brown then filed this complaint.

UPS has moved for summary judgment on all of Brown's claims.  UPS first contends that Brown has no evidentiary basis to support his claim that he was terminated on the basis of his race, and therefore his Title VII and § 1981 claims fail.  UPS also contends that Brown cannot establish a *prima facie* retaliation case, and that UPS had a legitimate, nonretaliatory reason for firing him in any event.  Finally, UPS contends that Brown cannot establish a *prima facie* hostile working environment claim.

DISCUSSION

Racial Discrimination:

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or

-3-

privileges of employment, because of such individual's race. . . ."  42 U.S.C. § 2000e-2(a)(1).  "In

the context of Title VII litigation, we recognize two types of discrimination claims: disparate

treatment and disparate impact."  *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  "Disparate

treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on

account of race, national origin, or gender."  *Id*.  Plaintiff's claim here is one of disparate

treatment.

 The allocation of the burden of proof in Title VII cases depends on the nature of the

plaintiff's evidence supporting the causation element.  If the plaintiff seeks to establish causation

by circumstantial evidence, the tripartite burden-shifting framework of *McDonnell Douglas*

applies.  *See Portis v. First Nat'l Bank,* 34 F.3d 325, 328 (5th Cir.1994) ( "Because direct

evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in

*McDonnell Douglas* [, which] establishes a prima facie case by inference.").  The analysis of

claims asserted under 42 U.S.C. § 1981 is identical to that under Title VII, and cases of

discrimination based on circumstantial evidence are also subject to the *McDonnell Douglas*

burden-shifting analysis.  *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir.

2004).

 Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of

establishing a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802 (1973).  In order to establish a *prima facie* case of discrimination based on race a

plaintiff must usually show that (1) he suffered an adverse employment action; (2) he was

qualified for the position; (3) he was within the protected class at the time of the decision; and (4)

the person selected was not within the protected class. *Rios v. Rossotti,* 252 F.3d 375, 378 (5th

Cir. 2001).  As to the fourth element, a plaintiff may alternatively show that others similarly

situated but not in his protected class were more favorably treated.  *Bryan v. McKinsey & Co.,*

*Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

      If the plaintiff establishes a prima facie case of discrimination, the burden of production

shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate,

nondiscriminatory reason for its disparate treatment of the plaintiff.  An employer meets its

burden of production by proffering admissible evidence of an explanation that would be legally

sufficient to justify a judgment for the employer.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502

(1993); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir. 1993); *Guthrie v. Tifco Indus.*,

941 F.2d 374 (5th Cir. 1991).  Once an employer articulates a legitimate, nondiscriminatory

reason for its action, the burden shifts to the plaintiff to produce admissible evidence which

demonstrates that the employer's reason is a pretext for prohibited discrimination.  *Barrow v.*

*New Orleans S.S. Ass'n*, 10 F.3d 292 (5th Cir. 1994); *Purcell v. Sequin State Bank & Trust Co.,*

999 F.2d  950, 957 (5th Cir. 1993).  In situations where an employer's reasons are "unpersuasive,

or even obviously contrived," plaintiff must nevertheless prove that the proffered reasons were

but a pretext for discrimination.  *St. Mary's Honor Ctr.*, 509 U.S. at 523.

      Because employment discrimination claims "involve nebulous questions of motivation

and intent," summary judgment is generally an inappropriate tool for resolving these cases.

*Thornbrough v. Columbus & Greenville R.R.Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations

omitted).  However, if the plaintiff fails to establish a *prima facie* case, *Bauer v. Albermarle*

*Corp.*, 169 F.3d 962, 966 (5th Cir. 1999), or if defendant presents strong evidence of a

legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with

additional evidence of pretext, summary judgment may be properly granted.  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

The parties do not dispute the first three elements of Brown's *prima facie* case, but disagree on whether Brown has established that others similarly situated but not in his protected class were more favorably treated.  The law in the Fifth Circuit requires Brown to demonstrate that employees outside his protected class received preferential treatment in circumstances nearly identical to his.  *Thompson v. Exxon Mobil Corp*., 2004 WL 2580678, *8 (E.D.Tex., Oct. 25, 2004) (citations omitted).  Brown argues that this is the case, but his evidence falls short.  He lists five Caucasian UPS drivers who had accidents but were not terminated by Bates.  One was an "intersection accident," another was a "backing accident," and the three remaining accidents are of an unknown nature. Ct. R. 37 p.11.  Brown cannot identify a single driver who was not terminated by Bates after an avoidable runaway accident.  The other runaway accidents cited by Brown occurred before Bates was the business manager at the Gulfport operation, and therefore do not present nearly identical circumstances.  *See Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) (employees are not in nearly identical circumstances when their actions were reviewed by different supervisors).  Brown therefore cannot show that others received preferential treatment and his *prima facie* case fails.

Assuming that Brown can establish a *prima facie* case of racial discrimination, UPS has articulated a legitimate, nondiscriminatory reason for his discharge.  The burden therefore, shifts to Brown to produce substantial admissible evidence which demonstrates that UPS's reason for termination are a pretext for prohibited discrimination.  *Wallace v. The Methodist Hosp. Sys*., 271 F.3d 212, 220 (5th Cir. 2001).  For a plaintiff to prevail at this stage, the summary judgment

proof must consist of more than a mere refutation of the defendant's legitimate nondiscriminatory reason. *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir. 1993). The Fifth Circuit has consistently held that "an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995). *See also Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983). Additionally, conclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden. *Grimes v. Tex. Dep't. of Mental Health & Mental Retardation,* 102 F.3d 137, 139 (5th Cir. 1996).

Although Brown argues that racial discrimination was the true reason he was terminated, he provides no evidence to support his claim. For example, he testified at deposition that Bates did not make any racial comments to him.[1] Brown contends that Bates would not even acknowledge him when he wished to talk to Bates about work issues, and that "Bates' handling of the Plaintiff's one, minor accident constitutes competent and credible evidence that the Plaintiff was treated less favorably than his Caucasian co-workers." Ct. R. 37 p.10. But there is nothing in the record suggesting that race was a motivating factor behind Bates' alleged actions. Brown's unsupported allegations are insufficient to meet his burden on summary judgment. UPS

---

[1] Q.    Did you ever have any interactions with Mr. Bates in which he made comments to you that you felt were racially derogatory?

A.    Just his demeanor.

Q.    I'm sorry?

A.    No. He didn't make any comments. He threatened my job . . . for taking my lunch break at home just because, I guess, the grievance. Out of retaliation, he did that.

Ct. R. 36-2 p. 9.

has presented strong evidence of a legitimate, nondiscriminatory reason for termination, which Brown is unable to rebut with additional evidence of pretext. Accordingly, UPS is entitled to judgment as a matter of law on Brown's racial discrimination claim.

Retaliation:

This claim requires Brown to show: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000), citing *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir. 1998). To establish a prima facie case, a plaintiff need only make a very minimal showing. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)). If Brown establishes a *prima facie* case, the burden then shifts to UPS to demonstrate a legitimate nondiscriminatory purpose for the employment action. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). If UPS satisfies this burden, Brown must prove that the UPS's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose. *Gee*, 289 F.3d at 345.

Brown argues that Bates was "adamantly angered" by the grievances Brown filed after Bates became his supervisor in 2007. Ct. R. 37 p.15. Brown says that his grievances were: 1) packages were distributed unevenly, forcing Brown to make more deliveries per day than other workers; 2) Bates did not authorize overtime pay when Brown had to work late to deliver these extra packages; and 3) Bates threatened Brown's job when Brown took his lunch break at home - a practice Brown contends was common among UPS drivers. Brown contends that the grievance concerning the lunch break was couched in terms of racial discrimination, in that he complained

-8-

that he was being treated differently than Caucasian drivers.  Ct. R. 36-3 p. 3(¶5).

The actual grievance forms attached as evidence are somewhat different.  One dated July 27, 2007, states: "I worked three ([illegible]) out of five (5) days over 9.5 hours.  I do not want to work over 9.5 hours."  The remedy requested was "[t]o have the hours worked reduced to 9.5 or less and be paid double time for all hours applicable according to contract."  Ct. R. 23-6 p. 4. Another dated September 3, 2007, states: I worked three (3) out of five days over 9.5 hours.  I do not want to work over 9.5 hours."  *Id*. at 5.  On October 1, 2007, he filed a grievance stating that he had been threatened by Bates that he would be terminated immediately if he went home on his lunch break.  Brown stated that "this was an act of retaliation on his part because of the grievance I had filed for being over 9.5 2 weeks in a 4 week period."  Ct. R. 36-6 p.6.  The final grievance provided to the Court is Brown's narrative of the events following the runaway accident and requesting reinstatement.  *Id*. at 9.

The first *prima facie* element of a retaliation claim requires Brown to show that he engaged in activity protected by Title VII.  The Fifth Circuit has defined "protected activity" as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Commc'ns, Inc*., 339 F.3d 376, 385 (5th Cir. 2003) (citation omitted).  Thus, if the conduct complained of by the plaintiff had nothing to do with race, color, religion, sex, or national origin, a retaliation claim cannot be maintained under Title VII.  *Grey v. Dallas Ind. Sch. Dist.*, 265 Fed. Appx. 342, 346-47 (5th Cir. 2008).  Brown's grievances fall into this category.  There is nothing about the language in these grievances that would alert UPS that Brown was alleging he was being treated differently because of his race.  *See Santucci v. Veneman*, 2002 WL 31255115 at *4

(S.D.N.Y. Oct. 8, 2002) (employee's complaints regarding work scheduling system were not protected activities under Title VII since complained of conduct had nothing to do with race, color, religion, sex, or national origin).  The first *prima facie* element is therefore not satisfied.

However, even that Brown has established a *prima facie* claim of retaliation, UPS offers a legitimate, nondiscriminatory reason explaining the termination.  Specifically, after investigation, UPS determined that Brown had allowed his truck to roll away from a parked position and hit another vehicle.  The contract governing Brown's employment relationship with UPS provided that he could be terminated without notice under those circumstances.  Brown has provided no evidence from which a jury could conclude that his termination was instead, the result of unlawful retaliation.

Hostile Work Environment:

To establish a *prima facie* case of hostile work environment, Brown must show: (1) he belonged to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003).  Brown must subjectively perceive the harassment to be severe and pervasive, and Brown's perception must also be objectively reasonable.  *Id.*  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations and internal quotation marks omitted).  To determine whether a hostile work environment existed, a court must consider "the frequency

of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citations omitted). Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996).

Brown has made no attempt to support his hostile working environment claim. Given the lack of evidence of racially motivated harassment in this case, the Court has no basis to find that Brown suffered racial harassment that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. UPS is therefore entitled to summary judgment on Brown's hostile working environment claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [23] filed by Defendant United Parcel Service, Inc. is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 27th day of April, 2010.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

-11-